**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**OLIVE GROUP NORTH AMERICA LLC**

**AMERICAN K-9 DETECTION SERVICES, LLC**

**CONSTELLIS INTEGRATED RISK MANAGEMENT SERVICES, INC.**

Plaintiffs,

v.

**AFGHANISTAN INTERNATIONAL BANK**

Bibi Mahro, Airport Road
Kabul, Afghanistan

Defendant.

Civil Action No.

**TRIAL BY JURY DEMANDED**

**COMPLAINT**

Olive Group North American LLC ("**Olive Group**"), American K-9 Detection Services, LLC ("**AMK9**"), and Constellis Integrated Risk Management Services, Inc. ("**IRM**" and collectively, "**Plaintiffs**"), by and through undersigned counsel, respectfully files this Complaint against the Defendant, Afghanistan International Bank ("**AIB**"), and in support thereof states as follows:

## INTRODUCTION

1. Plaintiffs are all subsidiaries of Constellis Holdings, providing security and training services internationally, and have been providing such services in support of the United States in Afghanistan for several years.

2. To obtain Private Security Company licenses from the Ministry of Interior Affairs of Afghanistan ("**MOI**"), IRM and Olive Group (collectively, "**Guarantors**") were required to provide bank guarantees to the MOI from a licensed bank in Afghanistan. Guarantors obtained those bank guarantees from AIB ("**Guarantees**") by providing, *inter alia*, cash collateral in the aggregate amount of approximately[1] $550,000 that Guarantors deposited with AIB as security for the Guarantees.

3. In addition, Olive Group and AMK9 maintained ordinary operating bank accounts with AIB, which accounts had an aggregate balance of approximately[2] $93,366.29 as of August 31, 2021.

4. In the aggregate, Plaintiffs have $643,366.29 on deposit with AIB.

5. On November 30, 2014, IRM's Guarantee expired. By the express terms of the guarantee, it required all claims against it to be made prior to its expiration. Prior to expiration, no claims were made against IRM's Guarantee nor can any claims be made against it at present.

[1] Olive Group's guarantee was secured by cash collateral in Afghan Afghani ("**AFN**"), the national currency for Afghanistan and is therefore subject to normal currency fluctuation.

[2] As certain sums were kept in AFN, they are subject to normal currency fluctuation.

6. Following the fall of the Islamic Republic of Afghanistan to the hands of the Taliban, the MOI no longer exists and Guarantors are no longer performing security services pursuant to their license.

7. On November 5, 2021, Plaintiffs demanded AIB return its funds held on deposit. This demand was improperly denied.

8. Plaintiffs are filing this action seeking an order directing AIB to remit back to them all sums AIB has on deposit from Plaintiffs.

**PARTIES**

9. Olive Group is a limited liability company organized under the laws of the Delaware with its principal place of business in Herndon, Virginia. Its sole member is ultimately owned by a Virginia corporation with its principle place of business in Herndon, Virginia.

10. AMK9 is a limited liability company duly organized under the laws of Delaware with its principal place of business in Moyock, North Carolina.

11. IRM is a corporation duly incorporated in Virginia with its principal offices in Herndon, Virginia.

12. AIB is the largest private bank in Afghanistan largely servicing commercial enterprises such as Plaintiffs. It is chartered under, and operates subject to, the commercial banking laws of Afghanistan.

**JURISDICTION AND VENUE**

13. AIB's 2020 annual report states that "[o]ne of the key factors in the success of AIB is our correspondent banking relationships that permit the Bank to do direct clearing

of US$ and other currencies." A copy of this annual report is attached as **Exhibit 1**. These clearing services permit AIB's clients to import goods or obtain services that are purchased in USD. Indeed, the ability to provide these clearing services is so important to AIB that it spends "annually around 5% of [its] revenue" on the "human resources and IT systems" required to provide it. Ex. 1 at 5.

14. Specifically, it is AIB's "correspondent banking relationships [that] permits [AIB] to do direct clearing of US$". Ex. 1 at 13.

15. Correspondent banking is where two financial institutions agree to maintain accounts with each other which permit more seamless international, cross-currency transactions.

16. By way of example, if an American corporation wants to purchase goods from a Japanese manufacturer, it would approach its domestic bank with the amount to wire in Yen. The United States bank would then deduct the equivalent amount from the American company's domestic account and instruct its correspondent bank in Japan to pay the Japanese manufacturer in Yen from its correspondent bank account with its Japanese partner.

17. At present, AIB maintains a correspondent banking relationship with Crown Agents Bank ("**Crown Bank**"), which has offices located in London, United Kingdom. Ex. 1 at 5. AIB's correspondent banking relationship with Crown Bank permits AIB to service customers with significant American relationships. In other words, if a company, like Plaintiffs, wanted to be able to pay Afghan vendors using US Dollars, it would utilize AIB's correspondent bank accounts with Crown Bank.

18. AIB's correspondent bank relationship with Crown Bank requires all US Dollar transfers to be processed through the Bank of New York Mellon, which is located in New York, New York. All of AIB's international transfers involving US Dollars, including those of Plaintiffs, flow through this District.

19. Therefore, personal jurisdiction exists pursuant to CPLR § 302(a)(1) as AIB regularly transacts business within the state of New York. Indeed, AIB itself admits that its business in the state of New York is critical to its existence. *See* Ex. 1 at 5.

20. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a) as the amount in controversy is in excess of $75,000 and the parties are citizens of different countries. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the acts or omissions giving rise to the claims occurred in this district.

**FACTS COMMON TO ALL COUNTS**

21. Guarantors sought to obtain Private Security Company licenses from the MOI. Under the MOI's Private Security Company Regulations, all foreign private security companies are required to provide a bank guarantee against any liabilities that may arise during providing security services in Afghanistan. The MOI requires guarantees to be provided by banks registered and licensed by Da Afghanistan Bank ("**DAB**"), Afghanistan's central bank.

22. To that end, AIB issued the Guarantees. IRM's Guarantee was in the amount of AFN20,000,000 and expired on November 30, 2014. Olive Group's Guarantee was in the amount of $300,000 and was set to expire on January 14, 2022.

23. No demand for payment was received by AIB prior to the expiration of IRM's Guarantee.

24. Further, following the fall of the Islamic Republic of Afghanistan to the hands of the Taliban, the MOI no longer exists — i.e. the beneficiary of the Guarantees — and Guarantors are no longer performing security services pursuant to its license.

25. In addition to the collateral, Plaintiffs maintained normal operating accounts with AIB, which they used to make payments in Afghanistan for local purchases. The balance in the account as of August 31, 2021 was approximately $93,366.29.

26. On November 5, 2021, Plaintiffs requested, by letter, the return of the funds securing the Guarantees as well as the funds held in their AIB operating accounts. A true and accurate copy of this letter is attached as **Exhibit 2**.

27. In response, AIB asserted that it had received a directive from DAB to stop international transfers. A true and accurate copy of this letter is attached as **Exhibit 3**.

28. Additionally, AIB asserted that it required the originals of the Guarantee and any amendments, along with a "no claim letter" from the MOI before it would cancel the already expired Guarantee.

29. In reality, neither of those conditions required by AIB have any legal or rational basis.

30. First, the DAB may issue directives, titled "circulars," to best implement or carryout Afghan banking laws. However, the DAB has no legislative powers and cannot change the banking laws of Afghanistan.

31. The laws of Afghanistan are clear: Plaintiffs are entitled to transfer and withdraw any available funds from its bank accounts in Afghanistan at its sole and absolute discretion pursuant to the Private Investment Law of Afghanistan, Official Gazette No. 819. AIB's refusal to transfer Plaintiffs' respective balances is a clear violation of AIB's account agreement and the applicable laws of Afghanistan.

32. Second, AIB's proposed condition precedent to its willingness to "cancel" the Guarantees and return the collateral are improper. The applicable rules for the Guarantee are the International Chamber of Commerce Uniform Rules for Demand Guarantees (URDG 758) which state, in Article 25.b, the obvious point that a demand guarantee, like the Guarantee, is terminated as of its expiry date. Further, the beneficiary of the Guarantees no longer exists.

33. AIB's imposition of impossible-to-meet conditions is nothing more than a stalling tactic as it struggles with the well-documented cash shortage in Afghanistan. At the moment, the MOI is controlled by the Haqqani Network led by its leader Sirajuddin Haqqani as the Minister of Interior. AIB knows that it is unlikely that Guarantors, subsidiaries of a U.S. corporation, will travel to Afghanistan and get the originals of the Guarantees and a no objection letter back from the MOI. Accordingly, AIB is using these baseless conditions to deter Guarantors from collecting its funds.

## COUNT I
## (BREACH OF CONTRACT – ACCOUNT AGREEMENT)

34. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

35. Plaintiffs and AIB are parties to certain account agreements ("**Account Agreements**"). The Account Agreements provides that they shall be governed by the laws of Afghanistan. It provides that AIB will allow a withdrawal from an account if there is sufficient cleared credit balance at the time the withdrawal is requested.

36. Plaintiffs had a cleared credit balance in the amount of approximately $93,366.29 as of August 31, 2021.

37. Plaintiffs have followed all terms and conditions of the Account Agreements.

38. AIB's failure to permit the withdrawals is a breach of the Account Agreements.

39. These breaches have damaged Plaintiffs in an amount no less than approximately $93,366.29 insofar as Plaintiffs do not have access to their funds held on deposit by AIB.

**COUNT II**
**(BREACH OF CONTRACT – GUARANTEE)**

40. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

41. Guarantors and AIB entered into contracts, i.e. the Guarantee, whereby Guarantors deposited with AIB a certain amount of funds as cash collateral for AIB to issue a letter of guarantee to the MOI.

42. Pursuant to the Guarantees, Guarantors maintained accounts with AIB in the approximate amount of $550,000.

43. IRM's Guarantee expired on November 30, 2014 and no claims have been made, or now could be made, against it. While Olive Group's Guarantee has not expired, it is no longer transacting business in Afghanistan and the beneficiary, the Ministry of the Interior, no longer exists.

44. Guarantors has fully complied with all of its obligations under the Guarantee.

45. Nevertheless, AIB improperly refuses to return the funds it held as collateral in breach of the Guarantees. This refusal is a breach of the Guarantees.

46. This breach has damaged Guarantors in an amount no less than $550,000 insofar as Guarantors do not have access to their funds held by AIB.

**COUNT III**
**(UNJUST ENRICHMENT – IN THE ALTERNATIVE)**

47. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

48. In the event a finder of fact determines that no enforceable contract(s) exist between the parties, Plaintiffs allege as follows.

49. Plaintiffs have conferred a benefit on AIB in an amount no less than $643,366.29 as it has deposited cash in that amount with AIB.

50. AIB has had the benefit of holding those funds and, without a judgment related to the same, will retain that benefit.

51. Equity and good conscience require that AIB return all of Plaintiffs' funds that AIB holds on deposit in the amount of $643,366.29.

## JURY DEMAND

52. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request that all issues and claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Olive Group North America LLC, American K-9 Detection Services, LLC, and Constellis Integrated Risk Management Services, Inc., pray for the following judgment and relief against Afghanistan International Bank as follows:

I. An award of damages pursuant to Count I in an amount to be proven at trial but in no event less than $93,366.29 as follows:

a. $59,765.13 in favor of Olive Group North America LLC; and

b. $33,601.16 in favor of American K-9 Detection Services, LLC.

II. An award of damages pursuant to Count II in an amount to be proven at trial but in no event less than $550,000.00 as follows:

a. $250,000 in favor of Constellis Integrated Risk Management Services, Inc; and

b. $300,000 in favor of Olive Group North America LLC.

III. In the alternative to Counts I and II, an award of damages pursuant to Count III in an amount to be proven at trial but in no event less than $643,366.29;

IV. Such other relief, in law or in equity, as this Court deems just and proper.

Respectfully submitted,

*/s/ Stephen M. Faraci, Sr.*

Stephen M. Faraci, Sr.
New York State Bar No. 5052501
Virginia State Bar No. 42748
WHITEFORD, TAYLOR & PRESTON, LLP
Two James Center
1021 E. Cary Street, Suite 1700
Richmond, Virginia 23219
T: (804) 977-3307
F: (804) 977-3298
Email: sfaraci@wtaplaw.com

and

Enayat Qasimi, Esq. (*pro hac motion* to be filed)
David L. Amos, Esq. (*pro hac motion* to be filed)
WHITEFORD, TAYLOR & PRESTON L.L.P.
1800 M Street, NW, Suite 450N
Washington, D.C. 20036-5405
T: 202.659.6800 / 703.280.9276
F: 202.331.0573 / 703.280.9137
E: eqasimi@wtplaw.com
damos@wtplaw.com

*Attorneys for Plaintiffs*