UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OLIVE GROUP NORTH AMERICA
LLC, AMERICAN K-9
DETECTION SERVICES, LLC, *and*
CONSTELLIS INTEGRATED RISK
MANAGEMENT SERVICES, INC.,

         Plaintiffs,

– *against* –

AFGHANISTAN INTERNATIONAL
BANK,

         Defendant.

**OPINION & ORDER**

21-cv-10836 (ER)

---

RAMOS, D.J.:

    Olive Group North America LLC ("Olive Group"), American K-9 Detection Services, LLC ("AMK9"), and Constellis Integrated Risk Management Services, Inc. ("Constellis") initially brought this action against Afghanistan International Bank ("AIB") on December 17, 2021.[1]  Doc. 1.  They asserted breach of contract and unjust enrichment claims.  *Id.* ¶¶ 34–51.  In short, Plaintiffs alleged that AIB improperly failed to return their funds, which were held on deposit at the bank.  *See id.* ¶¶ 1–8.

    On January 1, 2022, all rights to the claims asserted in this litigation were assigned by Plaintiffs[2] to New Constellis Holdings, Inc ("New Constellis").  Doc. 28; Doc. 28-1.  However, Plaintiffs informed neither AIB nor the Court of this assignment until they filed a substitution motion on April 1, 2022, *after* AIB had moved to dismiss the suit, in part on the basis that Olive Group and Constellis, improperly named as

---

[1] In the complaint, Plaintiffs stated that they are "all subsidiaries of Constellis Holdings[.]" Doc. 1 ¶ 1. However, they did not file a Rule 7.1 corporate disclosure statement.

[2] The rights were specifically assigned by Olive Group, Afghanistan, American K-9 Detection Services, LLC, Integrated Risk Management, Ltd., and other entities that are not parties to this litigation. Doc. 28-1 at 1; *see also* Doc. 43 at 2; Doc. 43-2 at 1. Plaintiffs incorrectly included Olive Group North America LLC, rather than Olive Group, Afghanistan, and Constellis Integrated Risk Management Services, Inc., rather than Integrated Risk Management Company, Ltd., in the complaint. *See* Doc. 43 at 2–3.

Plaintiffs, lacked standing.  Doc. 28; *see also* Doc. 18; Doc. 20 at 28–30 (arguing that the complaint should be dismissed against Olive Group and Constellis on the basis that they lacked standing to sue AIB).[3]  Additionally, when Plaintiffs filed their April 1, 2022, pleading regarding the assignment, they misidentified the parties assigning interest— errors that were not brought to the attention of either AIB or the Court until May 5, 2022.  Doc. 28 at 1–2; Doc. 43 at 2.  Additional motion practice regarding substitution pursuant to Rule 17 of the Federal Rules of Civil Procedure followed thereafter.  *See* Doc. 44; Doc. 46.

Before the Court is AIB's motion for sanctions and attorneys' fees pursuant to Rule 11 of the Federal Rules of Civil Procedure for Plaintiffs' "failure to conduct even the most cursory investigation before filing pleadings and motions" and their persistent errors, which have resulted in significant costs.  Doc. 53 at 5; *see also* Doc. 52.  For the reasons set forth below, the motion is GRANTED.

I.      BACKGROUND

   A.  Factual Background

Plaintiffs provide security and training services internationally, and they provided those services to the United States military in Afghanistan for a number of years.[4]  Doc. 36 ¶ 1.  Plaintiffs were required to obtain licenses from the Ministry of Interior Affairs of Afghanistan ("MIA") in order to provide those services.  *Id.* ¶ 2.

To acquire the licenses, certain subsidiaries of New Constellis had to provide bank guarantees to the MIA from a licensed bank in Afghanistan.[5]  *Id.*  The guarantees

---

[3] The motion to dismiss was filed on March 4, 2022.  Doc. 18.

[4] The Court draws the factual background from the amended complaint, Doc. 36.

[5] The original complaint states that Olive Group North America LLC and Constellis Integrated Risk Management Services, Inc. provided the guarantees.  Doc. 1 ¶ 2.  However, several months after filing the complaint, Plaintiffs indicated that they had "discovered inaccuracies in the identification of the real parties in interest in this litigation."  Doc. 43 at 2.  Pursuant to Plaintiffs' correction, it would seem that the subsidiaries that provided the guarantees were Olive Group, Afghanistan and Integrated Risk Management Company, Ltd.  *Id.*

were obtained from AIB by providing cash collateral in the amount of approximately $550,000.  *Id.* ¶ 2.  Other subsidiaries of New Constellis also maintained ordinary operating bank accounts with AIB, which held an aggregate balance of approximately $93,400.[6]  *Id.* ¶ 3.

Following the fall of the Islamic Republic of Afghanistan at the hands of the Taliban, Plaintiffs stopped providing the security services to the United States military in Afghanistan, and the MIA ceased to exist.  *Id.* ¶ 6.  In fact, Plaintiffs believe that private security companies are now banned from operating in Afghanistan.  *Id.*  Accordingly, on November 5, 2021, Plaintiffs demanded that AIB return their funds held on deposit.  *Id.* ¶ 7.  The demand was denied.  *Id.*

This action was brought to seek an order directing AIB to remit all sums AIB has on deposit for Plaintiffs, their subsidiaries, and their affiliates.  *Id.* ¶ 8.

On January 1, 2022, Plaintiffs and other wholly owned subsidiaries assigned all title, ownership, and other legal rights pertaining to their respective accounts with AIB to New Constellis Holdings, Inc.  *Id.*

### B. Procedural History

The complaint was filed on December 17, 2021.  Doc. 1.  The case was initially before Judge Allison Nathan.  After the Court granted several requests for extensions of time to answer or otherwise respond to the complaint, AIB filed a motion to dismiss the complaint on March 4, 2022.  Doc. 18.

Thereafter, Plaintiffs filed an amended complaint, Doc. 27, along with a substitution motion, Doc. 28, on April 1, 2022.  The substitution motion requested that the Court enter an order pursuant to Federal Rule of Civil Procedure 25(c), "substituting [New] Constellis as the plaintiff in this action in the place of Olive Group, AMK9, and

---

[6] The original complaint states that "Olive Group and AMK9 maintained ordinary operating bank accounts with AIB . . . ."  Doc. 1 ¶ 3.  Pursuant to Plaintiffs' correction regarding misidentified parties, it would seem that the subsidiaries that held these bank accounts were Olive Group, Afghanistan and AMK9.  Doc. 43 at 2.

[Constellis]."[7]  Doc. 28 ¶ 4.  The plaintiffs attached an assignment agreement, which was purportedly executed on January 1, 2022.  Doc. 28-1; *see also* Doc. 28 ¶ 2.

The case was then reassigned to the undersigned on April 5, 2022.  Min. Entry dated Apr. 5, 2022.  The amended complaint was ultimately properly filed on April 12, 2022, following a sequence of docketing errors.[8]  Doc. 36.  Several days later, on April 15, 2022, AIB responded in opposition to the substitution motion.  Doc. 37.  It argued that the motion should be denied because it was procedurally defective, untimely, and otherwise relied on inadequate information and an incomplete exhibit with insufficient documentation.  *Id.* at 1.

The plaintiffs replied on May 3, 2022, therein indicating that "[i]n the course of litigating [the substitution motion]," they discovered additional "inaccuracies in the identification of the real parties in interest in this litigation."  Doc. 43 at 2.  They specifically noted that "Integrated Risk Management Company, Ltd should be substituted in place of Constellis Integrated Risk Management Services, Inc. and Olive Group, Afghanistan should be substituted in place of Olive Group North America LLC, as the real parties in interest.  Further to clarify the assignment of the accounts to New Constellis, an Addendum to the Assignment Agreement [] was executed."  *Id.* at 2–3; Doc. 43-1.  In other words, Plaintiffs noted that the incorrect parties had been listed in both the complaint and the initial papers for the substitution motion.  Doc. 43 at 2–3.

That same day, Plaintiffs filed a letter motion requesting leave to file a motion to substitute real parties in interest pursuant to Federal Rule of Civil Procedure 17.  Doc. 44.  The letter provided context for Plaintiffs' filing errors.  They "partly attribute[d] the mistaken identities to nuances in translating from Dari to English the business licenses

---

[7] The motion specifically indicated that Olive Group North America LLC, American K-9 Detection Services, LLC, and Constellis Integrated Risk Management Services, Inc., the parties that initially brought the action, assigned all rights to the accounts at issue to New Constellis Holdings, Inc.  Doc. 28 ¶ 2.

[8] The attempt to file the amended complaint suffered from numerous docketing errors.  *See* Doc. 27; Doc. 29; Doc. 30; Doc. 32; Doc. 35.

issued by the applicable Government of Afghanistan business registration regulators." *Id.* at 2. And they further noted that "the confusion was [also] caused by Constellis's operational and organizational structure," adding that it "operates as one company but has several main subsidiaries . . . ." *Id.* at 2–3.

AIB filed a letter motion in opposition on May 12, 2022. Doc. 46. It emphasized that Plaintiffs had not provided AIB nor the Court with timely notice of the assignment. *Id.* at 2. Because of that, "Defendant spent unnecessary time and effort, and incurred substantial attorneys' fees, to respond to pleadings Plaintiffs knew were outdated and inaccurate." *Id.* Accordingly, AIB argued that sanctions, including attorneys' fees, were appropriate. *Id.* at 3.

The Court held a conference on May 19, 2022. Min. Entry dated May 19, 2022. The Court directed Plaintiffs to provide AIB with documentation regarding their Rule 17 motion. *Id.* It further directed the parties to submit a letter on consent regarding the substitution of the real parties in interest, so long as the documentation satisfied AIB as to the identities of the proper account holders. *Id.*; *see also* Hr'g Tr., Doc. 57 at 17:17–20:13. Finally, the Court instructed the parties to confer, in good faith, regarding attorneys' fees, granted AIB leave to file a motion for attorneys' fees if it believed there was a proper basis for the motion, and it provided a briefing schedule. *Id.* at 23:19–24:13. The Court specifically stated that such a motion for attorneys' fees "would be well taken."[9] Hr'g Tr., Doc. 57 at 22:19–22:20.

---

[9] During the conference, the Court underscored that Plaintiffs did not timely notify the Court of their errors. *See* Hr'g Tr., Doc. 57 at 10:20–11:8 ("Let me ask you this – because I find it curious – you said that during the briefing of the fully briefed motion, you determined that a mistake was made with respect to two of the named plaintiffs, correct? [ . . . ] Why did you then complete that briefing and not come to the Court immediately and say, we're going to have to change this first? Because that's what you're asking to do now; right? Now you're saying, well, we finished that brief, we determined during the course of briefing that motion that we had the wrong plaintiffs, but we finished the brief anyway, we filed it, and now we want to come back and do at step two what we should have done at step one.").

After several extensions of time to file the motion for attorneys' fees, *see* Docs. 49, 51, AIB filed the motion for sanctions and attorneys' fees on June 30, 2022,[10] Doc. 52. Then on July 6, 2022, Plaintiff filed a letter "to update the Court on the parties' efforts to meet and confer regarding Plaintiffs' Motion for Substitution of Parties (Dkt. No. 28) and Plaintiffs' Letter Motion to Substitute Real Parties in Interest (Dkt. No. 44)." Doc. 55. The parties jointly requested that the Court enter an order (1) substituting "Olive Group, Afghanistan" and "Integrated Risk Management Company, Ltd" in place of "Olive Group North America, LLC" and "Constellis Integrated Risk Management Services, Inc.," respectively; (2) substituting American K-9 Detection Services, LLC as Plaintiff in place of "Olive Group, Afghanistan" and "Integrated Risk Management Company, Ltd"; and (3) permitting Plaintiffs to file and serve an amended complaint reflecting the proper case caption. *Id.* The Court granted the request that same day.[11] Doc. 56.

Approximately five weeks after AIB filed its motion for sanctions and attorneys' fees, on August 10, 2022, AIB filed a letter indicating that Plaintiffs had failed to oppose the motion or otherwise request an extension to oppose the motion. Doc. 59 at 1. Accordingly, AIB asked the Court to deem the motion unopposed. *Id.* at 2. The next day, Plaintiffs filed a letter requesting leave to file a late opposition. Doc. 60. The Court granted the request, Doc. 61, and Plaintiffs filed the opposition that same day. Doc. 62.

Thereafter on August 22, 2022, Plaintiffs filed a notice of voluntary dismissal, therein requesting that the Court dismiss the matter in its entirety. Doc. 63. The Court so

---

[10] AIB noted that it had "incurred over $70,000 in fees directly related to—and responding to—Plaintiffs' missteps," and noted that that amount did not include the costs and fees incurred by making the sanctions motion, "which continue to accrue." Doc. 53 at 2. AIB did not provide documentation in support of that figure; however, it indicated that it "would be pleased to provide the Court with copies of [its] redacted invoices for *in camera* inspection should the Court wish to review them." *Id.* at 11 n.3. In its memorandum in support of the instant motion, AIB emphasizes that "Plaintiffs have rejected AIB's request for the full amount of these fees, leaving AIB to petition this Court for [the fees]." Doc. 53 at 11.

[11] However, no additional amended complaint was filed.

6

ordered the dismissal on August 23, 2022. Doc. 65. The case was then terminated, notwithstanding the pending sanctions motion. Accordingly, on August 24, 2022, AIB filed a letter motion to reopen the case for the purpose of adjudicating its sanctions motion, and it also requested leave to file a reply brief in further support of the motion. Doc. 66. The request was granted, Doc. 67, and AIB filed its reply brief on August 25, 2022, Doc. 68.

II.   LEGAL STANDARD

  A. Sanctions Pursuant to Rule 11

Federal Rule of Civil Procedure 11 authorizes the Court to impose sanctions when a party files or advocates for a pleading that is improper, warrantless, frivolous, or otherwise unsupported by available facts. Fed. R. Civ. P. 11(b)–(c); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (stating that "sanctions under Rule 11 are discretionary, not mandatory"). Importantly, Rule 11 imposes a duty upon counsel to conduct a reasonable inquiry into the validity and viability of their pleadings. Fed. R. Civ. P. 11(b) (noting that "by presenting to the court a pleading, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after *an inquiry reasonable under the circumstances*," that the pleading is valid and properly brought before the court) (emphasis added); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (emphasizing that Rule 11 directs counsel to "stop, think and investigate [] carefully before serving and filing papers") (quoting Amends. to Fed. R. Civ. P., 97 F.R.D. 165, 192 (1983)) (internal quotation marks omitted). A litigant's obligations with respect to the contents of its pleadings "are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment).

"The standard for imposing Rule 11 sanctions, however, is purposefully high, so as not to stifle legal creativity and zealous advocacy." *City of Perry, Iowa v. Procter & Gamble Co.*, No. 15 Civ. 8051 (JMF), 2017 WL 2656250, at *2 (S.D.N.Y. June 20, 2017). When reviewing a Rule 11 sanctions motion, courts should ensure that any decision is made with restraint. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003). Accordingly, courts must review the facts "objectively," *see Storey*, 347 F.3d at 388, and "[w]hen divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . . resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted) (emphasis in original).

"A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Such a motion "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* This procedural requirement is "strict," and "an informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient[.]"[12] *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012).

Sanctions imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R.

---

[12] Courts may also impose sanctions *sua sponte* pursuant to Rule 11(c)(3). *See Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) ("Rule 11 also gives the Court the power to initiate sanctions proceedings *sua sponte*."). However, as the Second Circuit has noted, "[b]y its terms, the rule [] precludes a court from awarding *attorneys' fees* on its own initiative." *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 94 (2d Cir. 1999) (emphasis added); *see also* Fed. R. Civ. P. 11(c)(4) ("The sanction may include nonmonetary directives; an order to pay a penalty into court; or, *if imposed on motion and warranted for effective deterrence*, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses resulting from the violation.") (emphasis added). Additionally, *sua sponte* sanctions pursuant to Rule 11 require a showing of bad faith. *Muhammad*, 732 F.3d at 108.

8

Civ. P. 11(c)(4). "The sanction may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

### B. Sanctions Pursuant to 28 U.S.C. § 1927

Another basis for sanctions lies in 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Section 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991). The purpose of this statute is "to deter unnecessary delays in litigation." *Id.* (quoting H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S. Code Cong. & Admin. News 2716, 2782). "Bad faith is the touchstone of an award under this statute." *Id.*

The Second Circuit has held that "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). "In contrast with sanctions under Rule 11, awards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards." *Id.*

### C. Inherent Authority

Finally, the Court may impose sanctions through its inherent power, which stems from the very nature of courts and their need to be able "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991) (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31 (1962))

9

(internal quotation marks omitted). The Supreme Court has made clear that because of the "very potency" of a court's inherent power, it should be exercised "with restraint and discretion." *Id.* at 44. Accordingly, clear "showing of bad faith" is required to justify the use of the court's inherent power. *Oliveri*, 803 F.2d at 1273.

## III. DISCUSSION

In its motion, AIB argues that sanctions are warranted here for two main reasons: first, Plaintiffs failed to conduct sufficient due diligence before they filed their complaint; and second, Plaintiffs failed to timely take action to update the Court and the defendant regarding assignment. Doc. 53 at 8–11. Because it has incurred substantial attorneys' fees addressing these errors and the parties cannot agree on reimbursement, AIB asks the Court to award reasonable fees pursuant to Rule 11. *Id.* at 11.

In response, Plaintiffs set out three main arguments. First, they contend that AIB "failed to comply with the pre-filing steps required by [Rule 11]"; second, they note that the Court's authority to award fees "[o]utside of Rule 11" is limited; and third, they argue that AIB's requested relief is disproportional to the alleged harm. Doc. 62 at 1–5. In regard to the requirements of Rule 11, Plaintiffs state that AIB failed to serve its attorneys' fees motion on them prior to filing, thus violating Rule 11's "safe harbor" requirement.[13] *Id.* at 2 (referencing the advisory committee's note to the 1993 amendment of Rule 11, which indicates that a motion for sanctions is not to be filed until at least 21 days after being served, so that the offending party has time to correct the alleged violation).

While the Court notes that AIB failed to meet the service requirements laid out in Rule 11(c)(2),[14] the Court grants AIB's motion pursuant to 28 U.S.C. § 1927 and its

---

[13] However, Plaintiffs note that the parties met and conferred regarding the attorneys' fees issues per the Court's order, following the May 25, 2022, conference. Doc. 62 at 2.

[14] AIB concedes that it did not serve the motion on Plaintiffs 21 days prior to filing it on this docket. Doc. 68 at 5–7; *see* Fed. R. Civ. P. 11(c)(2) (requiring that a motion for sanctions be served under Rule 5 at least 21 days prior to filing).

inherent authority to do so.  Reasonable attorneys' fees are warranted here.  Plaintiffs have repeatedly filed papers containing erroneous information—errors that could have been avoided by conducting reasonable and diligent inquiries—and have otherwise failed to timely appraise the Court and AIB of their missteps.

There is no dispute that the original complaint "mistakenly attributed ownership" of the bank accounts at issue to the wrong entities.  Doc. 43-1 ¶¶ 10–11.  There is also no dispute that, at least as of January 2022, that named plaintiffs lacked standing to sue AIB, Doc. 28 ¶ 2; Doc. 43-1 ¶ 14; however, they did not notify AIB or the Court regarding assignment until April 1, 2022, Doc. 28, *after* AIB had filed its motion to dismiss, Doc. 18.  Then, "in the course of litigating Plaintiffs' Motion for Substitution of Parties Under Fed. R. Civ. P. 25(c), Plaintiffs discovered inaccuracies in the identification of the real parties in interest in this litigation"; however, rather than immediately alert the Court and AIB, they took the time to complete and submit their reply brief.  Doc. 43 at 2; *see also* Hr'g Tr., Doc. 57 at 10:20–12:3.  Plaintiffs thereafter filed a letter motion requesting leave to file an additional motion to substitute real parties in interest pursuant to Rule 17, which was opposed by AIB via a letter response.  Doc. 44; Doc. 46.  And later, after receiving notice that AIB would be pursuing sanctions for all of this conduct, Plaintiffs simply voluntarily dismissed the action—despite months of motion practice and significant efforts on behalf of AIB and the Court in moving forward the litigation.  Docs. 63, 64, 65.

The record thus makes clear that Plaintiffs have made a number of avoidable errors, failed to timely act upon the knowledge of their errors, and vexatiously pursued allegations lacking merit with an awareness of the delay and costs caused by their actions.  This conduct is sanctionable.  Indeed, sanctions may be imposed pursuant to the Court's inherent authority "for commencing or for continuing an action in bad faith,

11

vexatiously, wantonly, or for oppressive reasons."[15] *Oliveri*, 803 F.2d at 1272 (noting that bad faith may be found "in the conduct of the litigation") (quoting *Hale v. Cole*, 412 U.S. 1, 15 (1973)).

To be sure, the Court recognizes the "restrictive" nature of this standard. *Id.* at 1272; *see also Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d at 1345 (holding that sanctions pursuant to § 1927 and the Court's inherent authority require a showing of bad faith or wanton behavior). However, given Plaintiffs' conduct, a modest award of reasonable attorneys' fees is warranted here.

## IV. CONCLUSION

For the foregoing reasons, AIB's motion for attorneys' fees is GRANTED. Counsel for Plaintiffs shall pay AIB $10,000 in attorneys' fees pursuant to this Opinion and Order.

The Second Circuit has instructed that while courts have "wide discretion" in considering sanctions, they "should be sensitive to the impact of sanctions on attorneys. They can be economically punishing, as well as professionally harmful; due process must be afforded." *Oliveri*, 803 F.2d at 1280.

In this case, Plaintiffs made numerous vexatious errors that imposed costs on AIB and the Court. However, the matter was ultimately resolved within nine months, and

---

[15] There is also a strong argument that sanctions are available pursuant to Rule 11(c)(2), despite the safe harbor provision and AIB's failure to serve the motion upon Plaintiffs pursuant to the Rule's requirements. The record makes clear that Plaintiffs had notice regarding the Rule 11 motion. Indeed, at the May 25, 2022, conference, the Court clearly raised Plaintiffs' errors—and their knowing failure to correct those errors—and it indicated that AIB could file its motion if the parties were not able to reach a consensus regarding appropriate attorneys' fees. Hr'g Tr., Doc. 57 at 10:20–11:8; *id.* at 22:19–22:20; Min. Entry dated May 19, 2022. Importantly, at that conference, Plaintiffs recognized that they had both (1) listed parties that lacked standing in the original complaint *and* (2) failed to timely notify the Court and AIB about the assignment of rights that took place in early January 2022. *See* H'rg Tr., Doc. 57 at 3:2–13:25. And they agreed to meet and confer regarding attorneys' fees. Min. Entry dated May 19, 2022. Accordingly, Plaintiffs had knowledge of the forthcoming motion and an ample opportunity to act upon AIB's allegations. *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (noting that Rule 11(c)(2) is "intended to provide a type of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation").

there is no indication that Plaintiffs have failed to understand the gravity of their missteps or the resulting consequences. Accordingly, the Court concludes that an award of $10,000 is sufficient but not greater than necessary to deter similar future conduct.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 52, and to close the case.

It is SO ORDERED.

Dated:   March 27, 2023
         New York, New York

                                                    _____
                                                        EDGARDO RAMOS, U.S.D.J.

13